UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA SOUTHERN DIVISION

RECEIVED
2007 FEB -6  P 12: 28

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| DANIEL DEAN BENTON AND<br>DANIEL DEAN,<br>    Plaintiffs | * |
| vs • | * |
| THE CITY OF HEADLAND, ALABAMA | * |
|     Defendant. | * |

Jury Trial Demanded
Case Number:
1:07CV106 - mht

## COMPLAINT

### Statement of the Parties

1. This is an action for money damages against the City of Headland, Alabama as well as a complaint for prospective injunctive relief and attorney fees. The acts complained of were performed under color of state law. The City of Headland is a political subdivision of the State of Alabama and the acts of its agents and employees are performed under color of state law. All acts and omissions complained of were performed within the line and scope of the employment of the various employees of the City of Headland, Alabama.

2. The plaintiff Daniel Dean Benton, hereinafter plaintiff Benton, was at the time of the events made the basis of the complaint a citizen residing in the City of Headland, Henry County, Alabama and the plaintiff Daniel Dean was also a citizen residing in the City of Headland, Henry County, Alabama. Both of the plaintiffs continue to reside in Headland, Henry County, Alabama.

### Statement of Jurisdiction

3. Claims are asserted pursuant to 42 U.S.C. 1983, and 1988 and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded

1

upon 28 U.S.C. §§1331 and 1343 and the aforementioned statutory and constitutional provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

## Causes of Action

### COUNT I

4.  Plaintiff Dean shows unto the court that on or about the 7th day of February 2005 he was the owner of certain real property located at 211 Railroad Street, in Headland, Henry County, Alabama. On the 7th day of February 2005 employees of defendant, acting under color of state law, without invitation did unlawfully and without a warrant enter the premises belonging to the plaintiff.

5.  The employees of the City of Headland were acting pursuant to an unconstitutional policy of the City of Headland that allows and encourages police officers to enter homes upon receipt of a domestic disturbance call without either an arrest warrant, a search warrant or being granted permission to enter. At the time the employees of the defendant entered the home they had observed no signs of any disturbance. They let themselves into the home after being instructed to wait on the porch.

6.  As a direct and proximate consequence of the entry into the home by the employees of the defendant the plaintiff has been damaged.

Wherefore plaintiff Dean demands judgment the City of Headland, Alabama in a sum reasonably calculated to compensate him for his damages arising from the unlawful entry into his home. Plaintiff further prays for the award of costs, expenses of litigation

2

and attorney fees as permitted by 42 U.S.C. 1988.

## COUNT II

6. A call was made to the police department by a twelve-year-old girl who was taking a shower when the police arrived. The twelve-year-old girl was angry because her mother would not allow her to go to a ballgame that her friends were going to and therefore she made a 911 call.

7. The response center called the home number of the plaintiff Dean. Plaintiff Dean's wife told the caller that there was nothing wrong and there was not any need to send the police. The caller advised plaintiff Dean's wife to tell the officers nothing was wrong leading her to believe that would conclude the matter. The plaintiff's wife advised the officers upon their arrival that nothing was wrong. The officers said they had to talk to the young girl that made the call. Plaintiff's wife told the officers she was in the shower and she would get her. The plaintiff's wife was dressed in her nightgown and house coat. The officers asked to come into the home and plaintiff's wife told the officers to wait on the porch. Notwithstanding that request the officers let themselves into the home even though they had no warrant to search the premises, were not serving an arrest warrant and did not see anything that would have caused them to conclude any exigent circumstance existed at the premises

8. After the defendant's employees entered the home of the plaintiff they were repeatedly asked to leave the home by Plaintiff's wife. When they did not leave when requested they were told by plaintiff Dean's wife, Katie, to leave the premises and repeatedly ignored her. When the plaintiff Dean heard the commotion caused by the

presence of the police officers he got out of bed. Upon entering the hallway he was confronted by persons whom he did not know and asked what they were doing in his house. He told them nothing was wrong and reiterated that they should leave his house. Had the employees of the defendant any license to enter the property of the plaintiff Dean that license was effectively and the employees of the defendant not having received adequate training, not understanding the scope of the protections afforded to citizens by the First and Fourth Amendments to the United States Constitution, not having seen signs of a disturbance and after consistently being told to leave by both plaintiff Dean and his wife, refused to do so and stayed on the premises without a warrant and without having seen any evidence of the commission of a crime.

9.      The employees of the defendant persisted in staying upon the premises owned by plaintiff Dean. Ostensibly they were staying upon the premises in order to fill out a report because the policy of the City of Headland requires a report to be filled out whenever a call is made regarding a domestic disturbance, that the report be filled out at the location from which the call emanated, whether there are objective signs of a disturbance and whether the occupants of the premises are requesting the police to leave their premises. The policy of the City of Headland that allows an officer to enter the home of a person from whom a call of a domestic disturbance originated, without objective signs of a disturbance, without a warrant to search the premises, without signs of an exigent circumstance is constitutionally flawed and has caused plaintiff Dean to be injured and damaged by violating his right to be secure in his home as guaranteed by the Fourth Amendment to the United States Constitution. The policy is likewise flawed in

that it interferes with the rights secured to the people by the First Amendment to the Constitution of the United States to maintain and control their intimate familial relationships and unduly burdens those relationships.

Wherefore plaintiff Dean demands judgment against the City of Headland, Alabama in a sum reasonably calculated to compensate him for his injuries and damages. Plaintiff further prays for the award of costs, expenses of litigation and attorney fees as permitted by 42 U.S.C. 1988.

## COUNT III

10.     Plaintiff Dean incorporates paragraphs 1 through 9 as if set out herein in full.

11.     After staying on the premises owned by plaintiff Dean the employees of the City of Headland continued to question him, and during the course of the exchange between them made derisive comments to him and threatened him with various punishments including arrest if he did not fill out their report. He continued to tell them to remove themselves from his home. The employees of the City of Headland offered no alternative to filling out the report right then such as coming to the police department to fill out the report the next day.

12.     While this exchange was occurring between plaintiff Dean and the employees of the City of Headland, numerous telephone calls were made to attempt to contact somebody in the City of Headland with authority to direct the police officer employees of the City of Headland to leave his home. The telephone calls that were attempted were to the Mayor and the Chief of Police of the City of Headland. No contact was made with either official by telephone.

13.   Additional calls were made to plaintiff Dean's employer and to plaintiff Dean's son, Daniel Dean Benton, hereinafter plaintiff Benton and others.

14.   Planitiff's employer arrived at the scene and attempted to enter the home of plaintiff Dean, but was threatened at gunpoint with arrest if he attempted to do so. Plaintiff Benton had entered into the home but left upon being told to leave.

15.   During the call to plaintiff Benton, plaintiff Dean stated the police officers were threatening to become physically violent with him and he was apprehensive they were going to hurt him.

16.   After persisting to remain on the premises, while plaintiff Dean was seated in a kitchen chair, one of the police officers physically grabbed Mr. Dean causing him to be thrown to the floor. Plaintiff Dean had made no gesture of provocation that warranted the use of force nor did he pose a threat to the officers. While lying on the floor plaintiff Dean's glasses had fallen off his face and were on the floor. Plaintiff Dean asked that the officer not break his glasses because he could not see. At that point one of the police officers stepped on and broke plaintiff Dean's glasses. As plaintiff Dean lay on the floor a knee was placed in the back of the plaintiff Dean and he was manhandled. Then a police officer wrapped his arm around the face of the plaintiff attempting to place plaintiff Dean in a choke-hold and was bitten by the plaintiff. At that juncture the plaintiff was struck yet again several times and a gash was opened upon his head and he began bleeding profusely from the gash on his head.

17.   After the police officers continued to use physical force against plaintiff Dean was eventually taken from his home on a stretcher as a result of his injuries. He suffered pain,

6

shock, humiliation, and has incurred medical bills, lost earnings and other expenses.

18.     The conduct complained of and the damages sustained are the result of a failure to adequately supervise the employees of the City of Headland Alabama, the failure to adequately train the employees of the City of Headland, Alabama, the failure of the City of Headland, Alabama to promote policies that protect the constitutional rights of its citizens, especially those of African American origin and is a part of pervasive discriminatory treatment of African Americans that has occurred by the City of Headland in its employment practices and in its law enforcement practices for a number of years.

19.     All of the acts complained of in the preceding paragraphs were done under color of state law.

Wherefore plaintiff Dean demands judgment against the City of Headland, Alabama in a sum reasonably calculated to compensate him for his injuries and damages. Plaintiff further prays for the award of costs, expenses of litigation and attorney fees as permitted by 42 U.S.C. 1988.

## COUNT IV

20.     On or about the 7th day of February 2005 plaintiff Dean suffered a trespass committed by officers of the City of Headland Alabama while acting within the line and scope of their employment.

21.     As a direct and proximate result of the trespass committed by the officers of the City of Headland, Alabama while acting in the line and scope of their employment plaintiff Dean suffered humiliation, physical injury, embarrassment, pain and suffering.

Wherefore plaintiff Dean demands judgment against the City of Headland, in a

sum reasonably calculated to compensate for his injuries and damages.

## COUNT V

22.　On or about the 7th day of February 2005 while acting in the line and scope of their employment with the City of Headland, Alabama police officers committed an assault and battery upon the plaintiff Dean.

23.　As a direct result of the assault and battery of the plaintiff Dean he was caused to suffer, pain, suffering, humiliation, incur medical bills, incur lost personal property, incur other expenses and has been damaged in his person as a result of personal injury.

Wherefore plaintiff Dean demands judgment against the City of Headland, Alabama in a sum reasonably calculated to compensate him for his injuries and damages.

## COUNT VI

24.　On or about the 7th day of February 2005, plaintiff Benton was at the home of his father. While there he witnessed his father being struck by police officers in the employee of the City of Headland, Alabama and was yelling at them to stop. He was directed to leave the home of his father and did so.

25.　After leaving the home of his father he was in the front yard and on the street adjacent to the front yard of the house. The City of Headland called a number of officers from diverse jurisdictions to assist them.

26.　While acting under the supervision of the City of Headland, police officers from the diverse jurisdictions and police officers of the City of Headland, Alabama told the plaintiff Benton to be quite as he was shouting "stop beating my father".

27.　The Chief of Police of the City of Headland was in the front yard and was

observing and ostensibly in command of the officers and condoned the conduct of the police officers as plaintiff Benton was tackled to the ground and as other acts of physical violence were perpetrated upon him.

28.    While the police officers were holding plaintiff Benton down on the ground they pressed a Taser type gun against him and held it there discharging it either continuously or repeatedly and then moved the Taser gun continuing to discharge it either continuously or repeatedly causing the Taser gun to burn a brand into the back of the plaintiff Benton. Plaintiff Benton was disfigured as a result of the use of the Taser gun.

29.    The City of Headland, Alabama through its policy of suppression of speech violated plaintiff Benton's right to free speech guaranteed by the First Amendment to the Constitution of the United States and he has been damaged. As a proximate result of the policies and practices of the City of Headland through its employees while acting in the line and scope of their employment and through those officers acting at the behest of the City of Headland the plaintiff Benton was damaged.

Wherefore plaintiff Benton demands judgment against the City of Headland, Alabama in a sum reasonably calculated to compensate him for his injuries and damages. Plaintiff further prays for the award of costs, expenses of litigation and attorney fees as permitted by 42 U.S.C. 1988.

## COUNT VII

30.    On or about the 7th day of February 2005, plaintiff Benton was at the home of his father. While there he witnessed his father being struck by police officers in the employ of the City of Headland, Alabama and was yelling at them to stop. He was directed to

leave the home of his father which he and did so.

31. After leaving the home of his father he was in the front yard and on the street adjacent to the front yard of the house. The City of Headland called a number of officers from diverse jurisdictions to assist them.

32. While acting under the supervision of the City of Headland, police officers from the diverse jurisdictions and police officers of the City of Headland, Alabama told the plaintiff Benton to be quite as he was shouting "stop beating my father".

33. The Chief of Police of the City of Headland was in the front yard and was supervision the conduct of the police officers. The police officers then tackled plaintiff Benton to the ground and held him down.

34. While the police officers were holding him down they pressed a Taser gun against him and held it there against his back discharging it either continuously or repeatedly and then moved the Taser gun continuing to discharge it either continuously or repeatedly causing the Taser gun to burn a brand into the back of the plaintiff Benton.

35. The City of Headland, Alabama through its policy of use of excessive force, lack of adequate training of its officers, lack of supervision of its officers and failure to properly supervise officers it called for assistance caused injury and damage to plaintiff Benton in violation of the Fourth Amendment to the Constitution of the United States. As a proximate result of the policies and practices of the City of Headland through its employees while acting in the line and scope of their employment and through those officers acting at the behest of the City of Headland the plaintiff Benton was damaged.

Wherefore plaintiff Benton demands judgment against the City of Headland,

Alabama in a sum reasonably calculated to compensate him for his injuries and damages. Plaintiff further prays for the award of costs, expenses of litigation and attorney fees as permitted by 42 U.S.C. 1988.

## COUNT VIII

36. On or about the 7th day of February 2005 while acting in the line and scope of their employment with the City of Headland, Alabama or while acting at the behest of the City of Headland police officers committed an assault and battery upon the plaintiff Benton.

37. As a direct result of the assault and battery of the plaintiff Benton he was caused to suffer, pain, suffering, humiliation, disfigurement, has lost personal property, incur other expenses and has been damaged in his person as a result of personal injury.

Wherefore plaintiff Benton demands judgment against the City of Headland, Alabama in a sum reasonably calculated to compensate him for his injuries and damages.

## COUNT IX

38. The plaintiffs incorporate paragraphs one through thirty-seven as if set out herein in full.

39. The City of Headland has failed to articulate and establish a policy relating to when a police officer may properly enter the home of a citizen residing within the police jurisdiction of the City of Headland. The failure to articulate a policy defining the permissible parameters of compliance with the Fourth Amendment of the Constitution of the United States place the plaintiffs at risk to suffer further constitutional deprivations in violation of established law and demonstrates a reckless disregard for the parameters of

the law by the City of Headland.

40. The City of Headland has further failed to articulate or define a policy falling within the parameters of the Fourth Amendment of the Constitution of the United States establishing when a police officer must leave the premises of a citizen when asked to do so.

41. The plaintiffs remain citizens of the City of Headland and continue to reside within its police jurisdiction. As a consequence of the failure of the City of Headland to define a constitutionally permissible policy of when a police officer may enter the home of a citizen and as a consequence of the failure of the City of Headland to define a constitutionally permissible policy of when a police officer must leave a home of a citizen when asked to do so the plaintiffs remain at risk of further injury and further constitutional violations of those rights guaranteed to them by the Constitution of the United States as applied to the states by the Fourteenth Amendment to the Constitution of the United States.

Wherefore plaintiffs, both jointly and severally, pray the court will enter an injunction enjoining the defendant, its agents and employees, from entering or remaining upon the premises of its citizens, and particularly the plaintiffs, or either of them, without first having obtained a judicial warrant permitting the entry upon or remaining on the premises of persons found within the police jurisdiction of the City of Headland, until such time as the City of Headland has articulated, established and implemented a constitutionally permissible policy defining when a police officer may lawfully enter the home of its citizens or persons living within its police jurisdiction and when a police

officer is required to leave the home of citizens or persons living within its police jurisdiction when asked to do so.

                                                                                                   Charles N. Reese
Reese & Reese Attorneys
Attorney for Plaintiff
P.O. Drawer 250
Daleville, Alabama 36322
334-598-6321

## JURY DEMAND

Comes the Plaintiff in the above styled cause and demands trial by struck jury for all counts of the complaint.

                                                                                                  Charles N. Reese
Reese & Reese Attorneys
Attorney for Plaintiff
P.O. Drawer 250
Daleville, Alabama 36322
334-598-6321